IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TANGELO IP, LLC,

    Plaintiff,

v.

TUPPERWARE BRANDS CORP.,

    Defendant.

C.A. No. 18-cv-692-RGA

MEMORANDUM ORDER

Presently before the Court is Defendant's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), on the basis that the asserted patent claims are invalid under 35 U.S.C. § 101. (D.I. 7). I have reviewed the parties' briefing. (D.I. 8, 11, 14). I heard oral argument on November 15, 2018.

## I. BACKGROUND

On May 7, 2018, Plaintiff brought this action against Defendant alleging infringement of U.S. Patent No. 8,429,005 ("the '005 patent"). (D.I. 1). On June 12, 2018, Defendant filed this motion to dismiss. The parties agreed at oral argument that claim 1 of the '005 patent is representative. (Tr. at 24:20–25:7). Claim 1 recites:

> 1. A method for providing to a user an interactive and electronic replication of at least a portion of a corresponding physical publication page, comprising:
>
>     associating a page number of a physical publication page with an interactive and electronic replication of at least a portion of a physical publication page;
>
>     the physical publication page having at least two different products appearing on the physical publication page;
>
>     the page number appearing on the physical publication page along with the at least two different products;

the page number and the two different products being visible on the physical publication page;

receiving by a host computer comprising at least one computer processor an input representing the page number;

providing from the host computer the interactive and electronic replication of the at least a portion of the physical publication page in response to receiving the input representing the page number;

the interactive and electronic replication of the at least a portion of the physical publication page including duplications of the appearances of the at least two different products;

the duplications of the appearances of the at least two different products being exact reproductions of the appearances of the at least two different products contained within the physical publication page;

the interactive and electronic replication enabling the user to obtain additional information on the at least two different products contained within the interactive and electronic replication; and

wherein the user is able to see the interactive and electronic replication and the at least two different products in the physical publication page and can obtain the additional information on the at least two different products contained within the interactive and electronic replication of the at least a portion of the physical publication page by receiving the interactive and electronic replication.

'005 patent, claim 1.

## II. LEGAL STANDARD

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized an implicit exception for three categories of subject matter not eligible for patentability—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The purpose of these carve outs is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012). "[A] process is not unpatentable simply because it contains a

2

law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* at 1293–94 (internal quotation marks and emphasis omitted). In order "to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 1294 (emphasis omitted).

In *Alice*, the Supreme Court reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." 134 S. Ct. at 2355. First, a court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to "the elements of the claim both individually and as an 'ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* "A claim that recites an abstract idea must include 'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 2357. Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 2358 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610–11 (2010)). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* For this second step, the machine-or-transformation test can be a "useful clue," although it is not determinative. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014).

3

"Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law," and "is a matter of both claim construction and statutory construction." *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010). "Claim construction is a question of law." *In re Nuijten*, 500 F.3d 1346, 1352 (Fed. Cir. 2007).

The Federal Circuit has held that a district court is not required to individually address claims not asserted or identified by the non-moving party, so long as the court identifies a representative claim and "all the claims are substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (quotation marks omitted).

## III. ANALYSIS

### a. *Alice* Step One

Claim 1 of the '005 patent, though lengthy, has few substantive limitations. The claim essentially comprises: (1) associating a page number of a physical publication page with an interactive and electronic replication of at least a portion of that page; (2) the page visibly having at least two different products and a page number; (3) receiving by a host computer an input page number; (4) providing the replication of the page; and (5) the replication enabling the user to obtain additional information on the products. '005 patent, claim 1. I believe this method is directed to the abstract idea of using an identifier to allow a reader of a printed publication to access related information not in the printed publication.

Claimed methods that describe concepts "long-practiced in our society" have been found directed to an abstract idea under *Alice* step one. *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369–70 (Fed. Cir. 2015); *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347 (Fed. Cir. 2014); *see also Alice*, 134 S. Ct. at 2356.

"It is not enough, however, to merely trace the invention to some real-world analogy." Rather, a court should "consider the claim as a whole to determine whether the claim is directed to an abstract idea or something more." *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1011 (Fed. Cir. 2018). In *Data Engine*, the claimed invention related to tabs in electronic spreadsheets. The court acknowledged that tabs had existed outside the context of electronic spreadsheets prior to the claimed invention, but found the claims not directed to an abstract idea due to the "functional improvement achieved by the specifically recited notebook tabs in the claimed invention." *Id.* The claimed tabs were "specific structures" that increased functionality by allowing the user to avoid navigating between spreadsheets in separate windows. *Id.*

Defendant argues that the '005 patent is directed to the abstract idea long-practiced by retailers providing telephone sales representatives to support their printed product catalogs. "Customers would contact sales representatives and obtain additional product information by keying in on the catalog page number, description, or part number associated with the product." (D.I. 8 at 11). I agree. Considering the claims as a whole, I do not think the '005 patent is directed to "something more" than an abstract idea. Unlike the claims in *Data Engine*, the '005 patent claims do not describe "specific structures" that provide functional improvements. Any improvements gained over traditional catalog sales, such as being able to view a larger version of the product, are a result of generic computer technology, not specific claim limitations.

Plaintiff argues that the '005 patent claims are not abstract because they "specifically address a technological problem (inability to use a computer to locate additional information about product descriptions and separate enlarged views of each of the products shown within the image) via an unconventional technological solution." (D.I. 15 at 11). Plaintiff relies on *Enfish, LLC v. Microsoft Corp.*, which held that the asserted claims were not directed to an abstract idea

because they were "directed to a specific improvement to the way computers operate." 822 F.3d 1327, 1336 (Fed. Cir. 2016).[1] In *Enfish*, the claims were directed to a self-referential database, which functioned differently than a conventional database. As such, the court found the claims to be "a specific type of data structure designed to improve the way a computer stores and retrieves data in memory." *Id.* at 1339.

Unlike the claims in *Enfish*, the '005 patent claims do not address "the way computers operate." Plaintiff argues that the '005 patent describes an improvement to "conventional visual media, by creating a graphical user interface that includes an interactive and electronic replication of a corresponding physical publication page or a portion thereof." (D.I. 11 at 11). Applied to claim 1, I believe the "conventional visual media" is the printed "physical publication page." Therefore, the claimed improvement is to the physical publication page—providing an interactive electronic replication of the page. Although the improvement is done using a computer, it is not an improvement to computer functionality.[2]

At oral argument, Plaintiff also cited a subset of cases that apply *Enfish* to "usability" of graphical user interfaces. In *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, the Federal Circuit found that the claims disclosed "an improved user interface for electronic

---

[1] Plaintiff also argues that claim construction is required to resolve this motion. (D.I. 11 at 7–9). Plaintiff never identifies which terms require construction or why. At oral argument, Plaintiff clarified that by claim construction, it merely seeks to ensure each element of the claim is accounted for. (Tr. at 7:14–19).

[2] At oral argument, Plaintiff also cited *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288 (Fed. Cir. 2016), and *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017). In *Amdocs*, the asserted claims addressed problems in data distribution to allow use of a smaller database. 841 F.3d at 1300–01. In *Visual Memory*, the claims described an improved computer memory system. 867 F.3d at 1259. Like the claims in *Enfish*, the claims in *Amdocs* and *Visual Memory* solved problems related to data management, which led to better computer functionality. In contrast, the '005 patent claims solve problems related to "a physical publication page." That is, it is difficult to obtain additional information related to images on a physical document. The claimed solution, which links the physical document to an interactive digital copy, has no effect on computer functionality. Therefore, I find *Amdocs* and *Visual Memory* clearly distinguishable from the present case.

6

devices," and thus were "directed to an improvement in the functioning of computers, particularly those with small screens." 880 F.3d 1356, 1362–63 (Fed. Cir. 2018); *see also Data Engine Techs.*, 906 F.3d at 1007–08 (finding claims not directed to an abstract concept in part because they made computer spreadsheet functionality more "user-friendly"); *Trading Technologies Int'l, Inc. v. CQG, Inc.*, 675 F. App'x 1001, 1004 (Fed. Cir. 2017) (affirming the district court's finding that the claims were not directed to an abstract idea because they "solve problems of prior graphical user interface devices in the context of computerized trading relating to speed, accuracy and usability" (ellipses and brackets omitted)). I think *Core Wireless* and the related cases are distinguishable for the same reasons discussed with respect to *Enfish*. The '005 patent claims are directed to improving usability of a physical publication page, not a graphical user interface. The fact that the claims rely on a graphical user interface to execute the improvement does not change the analysis.

Therefore, I find the '005 patent claims are not directed to improvements in computer functionality. Rather, I believe the '005 patent claims are directed to the abstract idea of using an identifier to allow a reader of a printed publication to access related information not in the printed publication—the same concept long practiced by systems of sales representatives and printed product catalogs.

### b. *Alice* Step Two

Upon finding the '005 patent claims directed to an abstract idea, I next consider whether they provide an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 134 S. Ct. at 2355. Method claims that "merely require generic computer implementation" do not transform an abstract idea into a patent-eligible

7

invention. *Id.* at 2357; *see also, e.g., Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1349 (Fed. Cir. 2016) (finding limitations that "represent merely generic data collection steps or siting the ineligible concept in a particular technological environment" do not add an inventive concept).

The '005 patent claims do not have an inventive concept that renders them patent-eligible. Claim 1 merely applies the abstract idea of using a catalog identifier to obtain additional product information in a generic computer environment. Rather than receiving information orally from a sales representative, a user can now receive information visually on the computer. The claim limitations are elements inherent to using a generic computer—a computer receiving an "input representing the page number," the computer providing an "interactive and electronic replication of at least a portion of the physical publication page," and the replication "enabling the user to obtain additional information" on the products, "wherein the user is able to see" the replication. '005 patent, claim 1. Instead of the user orally communicating the page number to a sales representative, the user inputs the page number into a computer. Instead of the sales representative orally providing additional information, a computer displays a page containing the additional information. I do not believe these limitations, individually or together, amount to "significantly more" than a patent on the abstract idea itself.

Therefore, I find the '005 patent claims invalid under § 101.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (D.I. 7) is **GRANTED**.

IT IS SO ORDERED this 26 day of November 2018.

*Richard G. Andrews*
United States District Judge