IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TANGELO IP, LLC,                               )
                                              )
                        Plaintiff,            )
                                              )
            v.                                )          C.A. No. 18-692-RGA
                                              )
TUPPERWARE BRANDS CORPORATION,                )
                                              )
                        Defendant.            )
                                              )

**TUPPERWARE BRANDS CORPORATION'S OPENING BRIEF IN
SUPPORT OF ITS MOTION FOR EXCEPTIONAL CASE**

FISH & RICHARDSON PC
Jeremy D. Anderson (#4515)
222 Delaware Ave., 17th Floor
P.O. Box 1114
Wilmington, DE 19801
(302) 652-5070 Telephone
(302) 652-0607 Facsimile
janderson@fr.com

Neil J. McNabnay
Ricardo J. Bonilla
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com
rbonilla@fr.com
tdawson@fr.com

**ATTORNEYS FOR DEFENDANT
TUPPERWARE BRANDS CORPORATION**

Dated:  December 10, 2018

# **TABLE OF CONTENTS**

**Page(s)**

I.  NATURE AND STAGE OF THE PROCEEDINGS ................................................... 1

II.  SUMMARY OF THE ARGUMENT ...................................................... 1

III.  STATEMENT OF FACTS ...................................................... 2

    A.  Tangelo's Litigation Campaign ................................................ 2

    B.  Tangelo's '005 Patent ................................................ 3

    C.  The Court's Dismissal Order ...................................... 4

IV.  LEGAL STANDARD.................................................... 5

V.  ARGUMENT ...................................................... 6

    A.  Tangelo's case was objectively meritless because the '005 Patent is objectively ineligible................................................ 6

    B.  An exceptional finding determination would advance considerations of compensation and deterrence.................................. 8

VI.  CONCLUSION.................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Automated Bus. Cos. v. NEC Am., Inc.*,
    202 F.3d 1353 (Fed. Cir. 2000)...........................................................................12

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
    No. 4:17-cv-5928, 2018 WL 3328164 (N.D. Cal. July 6, 2018) ..........................10, 11, 12, 13

*Commil USA, LLC v. Cisco Sys., Inc.*,
    135 S. Ct. 1920 (2015)................................................................................12, 13

*eDekka LLC v. 3Balls.com, Inc.*,
    2015 WL 9225038 (E.D. Tex. Dec. 17, 2015).............................................. *passim*

*Epic IP LLC v. Backblaze, Inc.*,
    No. 1:18-cv-141, 2018 WL 6107029 (D. Del. Nov. 21, 2018)...............................12

*Kirtsaeng v. John Wiley & Sons*,
    136 S. Ct. 1979 (2016)...................................................................................13

*My Health, Inc. v. ALR Techs., Inc.*,
    2017 WL 6512221 (E.D. Tex. Dec. 19, 2017).......................................................10

*SAP America, Inc. v. InvestPic, LLC*,
    No. 3:16-cv-02689, 2018 WL 993854 (N.D. Tex. Feb. 21, 2018) ..........................10

*Tangelo IP, LLC v. Dollar General Corp.*,
    No. 2:16-cv-202, Dkt. Nos. 35, 41, 72 (E.D. Tex.) ................................................6

**Statutes**

Patent Act Section 285.......................................................................................9, 10, 12

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..........................................................................................5

## I.     NATURE AND STAGE OF THE PROCEEDINGS

On May 7, 2018, Plaintiff Tangelo IP, LLC filed this lawsuit accusing Defendant Tupperware Brands Corporation of infringing U.S. Patent No. 8,429,005. Tangelo accused Tupperware of infringing the '005 Patent because of its online catalog system. (D.E. 1 ("Compl.") ¶ 21.) Tupperware responded by moving to dismiss Tangelo's claims under Federal Rule of Civil Procedure 12(b)(6) because the '005 Patent's claims were subject matter ineligible. (D.E. 7.) The Court held a hearing on Tupperware's motion on November 15, 2018, and on November 26, 2018, the Court granted Tupperware's motion and dismissed Tangelo's claims. (D.E. 17 ("Dismissal Order").)

## II.     SUMMARY OF THE ARGUMENT

This case stands out from others due to the exceptionally weak claims that Tangelo asserted. Tangelo has asserted the '005 Patent in litigation almost three dozen times in this District and others. The premise of these suits is that the alleged infringer, typically a retailer, publishes advertising flyers online. The '005 Patent claims the abstract idea of placing a printed publication on a computer so a user can obtain additional information about its content—the claims' language is directed to the use of general purpose computer components used in a conventional manner to perform this abstract idea. The '005 Patent claims do nothing new or inventive: they do not improve a computer, nor do they improve a technical process. Instead, the '005 Patent's claims use conventional computers for their ordinary and intended purpose to do what has otherwise been performed manually for over a century: allow users to obtain additional information about a product depicted in a printed publication.

In its Dismissal Order, the Court recognized that the '005 Patent's claims are directed to a "concept long practiced by systems of sales representatives and printed product catalogs."

Dismissal Order at 7. Such a concept is not eligible for patenting, and any reasonable litigant reviewing the '005 Patent's claims in light of the mounting precedent establishing the boundaries of subject matter eligibility should have realized that the claims were ineligible and not pursued them in litigation. Tangelo, however, is not a reasonable litigant. On over thirty occasions, Tangelo has targeted a company with its '005 Patent, ignoring the mountain of case law that makes the patent subject matter ineligible and forcing the defendant into costly litigation and, eventually, into paying Tangelo to settle. This Court finally put an end to Tangelo's campaign, but not before Tupperware was forced to expend resources itself to defend against these baseless claims. Litigants like Tangelo should be deterred, and defendants like Tupperware should be compensated, when dealing with objectively meritless patent claims like those brought by Tangelo here. Accordingly, the Court should find this case to be exceptional and grant Tupperware its attorneys' fees.

## III.    STATEMENT OF FACTS

### A.    Tangelo's Litigation Campaign

To date, Tangelo has filed thirty-two lawsuits alleging infringement of the '005 Patent in the federal courts of Delaware, California, New York, and Texas. On multiple occasions, defendants have filed motions attacking the eligibility of the '005 Patent's claims. *See, e.g.*, *Tangelo IP, LLC v. Dollar General Corp.*, No. 2:16-cv-202, Dkt. Nos. 35, 41, 72 (E.D. Tex.) (motions for judgment on the pleadings filed by Brooks Brothers, High Performance, Mrs. Fields, Snap-On, and Flipp). In November 2016, a hearing was held on the issue of eligibility in the Eastern District of Texas. *See id.* at D.I. 125. Although those cases eventually settled and no ruling ever issued on the merits, Tangelo was at least on notice of the eligibility issues with its patent's claims in 2016. Nonetheless, Tangelo pushed on with its litigation campaign, filing over a dozen lawsuits on the '005 Patent after 2016.

B.      **Tangelo's '005 Patent**

The problem with Tangelo's continued assertions of the '005 Patent is that the patent is objectively ineligible. It alleges that the problem with the prior art is that traditional print media "does not provide the depth of content permitted by electronic files," and users may be unable to "locate additional information about objects shown in" traditional print media. '005 Patent at 1:43–52, 2:11–14. This, the '005 Patent alleges, is "because traditional visual media cannot be associated with, or 'hot-linked' to, additional sources of information like electronic files." *Id.* at 1:48–50. The patent purports to solve this problem with "a system and method creating an interactive electronic representation of a corresponding traditional visual media object that can 'hot-link' objects in printed publications, television and movie scenes, and the like, to related electronic documents." *Id.* at 3:3–7. The patent attempts to provide this abstract solution by providing an "interactive electronic representation" of the traditional print media. *See* '*id.* at claims 1, 14, 15, and 17. Specifically, the patent contemplates that there is a physical publication, referred to as a "visual media object," that can include portions of "magazines, catalogs, newspapers, pamphlets, . . . [and] video cassettes and discs." '*Id.* at 11:12–19. An electronic replication of the physical publication is created "by using a scanner, a digital camera, or software" to capture the publication in a digital format. '*Id.* at 4:60–67. The '005 Patent then envisions "associate[ing] [the] visual media object with a unique identifier."

The '005 Patent further contemplates that "Portions of the IER may be 'hot-linked' to other electronic documents, web sites, or other IERs." '*Id.* at 4:9–11. The "hot-links" allow "the user [to] 'click on' the digital graphic object [] and the browser will move to another non-interactive Internet site." '*Id.* at 15:53–55. This way, for example, "the user can 'click on' the unique identification tag [] a so that the information contained within the unique identification tag [] is

3

automatically loaded or transferred to the RETAILSTREET.COM Internet site." *'Id.* at 16:2–5 "Hot linking" can be accomplished by any number of methods, including "retriev[ing the IER] by WWW server 142 from a product location/availability database." *'Id.* at 19:22–23. Thus, by interacting with this electronic replication, a user can obtain additional product information. *'Id.* at 3:39–42, Fig. 5. The '005 Patent relies on conventional methods to accomplish this idea. For example, the patentee suggests the user may "click on" "hot-links" (quotations in original) to retrieve relevant information from generic web based servers. *See, e.g.*, *'id.* at 16:52–55. This and other conventional processes are described exclusively by their outcome, rather than the technical step to accomplish them.

The claims of the '005 Patent recite the steps of (1) ***associating*** a page number between the "electronic replication" and the "physical publication," (2) a "host computer" ***receiving*** the associated page number, and (3) the "host computer" ***providing*** an "electronic replication" of the "physical publication" in response to receive the page number. The vast majority of the claims are non-technical filler referring to the subject matter or content on a printed publication that has been replicated.

### C.    The Court's Dismissal Order

This Court quickly recognized the ineligibility issues with the '005 Patent. Before setting a Rule 16 conference, the Court ordered a hearing on Tupperware's motion to dismiss, and shortly after that hearing, the Court issued its Dismissal Order. In it, the Court noted that "the '005 patent claims are directed to the abstract idea of using an identifier to allow a reader of a printed publication to access related information not in the printed publication—the same concept long practiced by systems of sales representatives and printed product catalogs." Dismissal Order at 7. The Court thus found that the claims failed step one of the *Alice* analysis. *See id.*

4

At step two, the Court found that the "claims do not have an inventive concept that renders them patent-eligible." *Id*. at 8. "Claim 1 merely applies the abstract idea of using a catalog identifier to obtain additional product information in a generic computer environment." *Id.* The Court again returned to the sales representative analogy, noting that, in the claims, "[r]ather than receiving information orally from a sales representative, a user can now receive information visually on the computer." *Id.* The computer limitations, however, were "elements inherent to using a generic computer." *Id.* Accordingly, the Court found the claims also failed step two of the *Alice* analysis. *See id.* The claims were thus ineligible, and the Court granted Tupperware's motion and dismissed the case.

## IV.    LEGAL STANDARD

Section 285 of the Patent Act allows a district court, in an exceptional case, to award reasonable attorney fees to the prevailing party. 35 U.S.C. § 285. "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1756. An exceptional case under § 285 is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.*

The facts here implicate all of the "nonexclusive" factors relevant to § 285 suggested by the Supreme Court in *Octane Fitness*, including "meritlessness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 1756, n.6. Tupperware need only demonstrate that this case is exceptional by a preponderance of the evidence, but the facts presented here exceed that standard. *Id*. at 1758.

5

## V.     ARGUMENT

### A.     Tangelo's case was objectively meritless because the '005 Patent is objectively ineligible.

This frivolous case "stands out" from others because no reasonable litigant could expect success on the merits of Tangelo's § 101 position given the governing law. This Court should follow the example set by itself and others that an award of attorneys' fees is called for when a patentee advances meritless § 101 arguments such as these. *See, e.g., Inventor Holdings*, 876 F.3d at 1377–80 (affirming district court grant of Section 285 motion); *Cellspin Soft, Inc. v. Fitbit, Inc.*, No. 4:17-cv-5928, 2018 WL 3328164, at *3 (N.D. Cal. July 6, 2018) (finding case exceptional based on objectively weak claims that the court had found ineligible); *SAP America, Inc. v. InvestPic, LLC*, No. 3:16-cv-02689, 2018 WL 993854 (N.D. Tex. Feb. 21, 2018) (same); *My Health, Inc. v. ALR Techs., Inc.*, 2017 WL 6512221, at *1 (E.D. Tex. Dec. 19, 2017) (same); *eDekka LLC v. 3Balls.com, Inc.*, 2015 WL 9225038 (E.D. Tex. Dec. 17, 2015) (same).

For example, in *Inventor Holdings*, in affirming this Court's award of attorneys' fees, the Federal Circuit concluded that this Court "acted within the scope of its discretion in finding [the] case to be exceptional based on the weakness of [plaintiff's] § 101 arguments and the need to deter similarly weak arguments in the future." *Inventor Holdings*, 876 F.3d at 1377. After concluding that the claims at issue were "manifestly directed to an abstract idea," the Federal Circuit went on to state "the only components disclosed in the specification for implementing the asserted method claims are unambiguously described as 'conventional.'" *Id*. at 1378. The Federal Circuit noted that "while we agree with [plaintiff] as a general matter that it was and is sometimes difficult to analyze patent eligibility under the framework prescribed by the Supreme Court in *Mayo*, there is no uncertainty or difficulty in applying the principles set out in *Alice* to reach the conclusion that the

[asserted] patent's claims are ineligible" because the "patent claims here are directed to a fundamental economic practice, which *Alice* made clear is, without more, outside the patent system." *Id*. at 1379.

Like the claims in *Inventor Holdings*, "there is no uncertainty or difficulty in applying the principles set out in *Alice*" and the long line of Federal Circuit precedents holding claims like Tangelo's patent-ineligible. *See id.* This Court recognized that "[c]laimed methods that describe concepts 'long-practiced in our society' have been found directed to an abstract idea under *Alice* step one." Dismissal Order at 4 (citations omitted). It then concluded that "the '005 patent claims are directed to the abstract idea of using an identifier to allow a reader of a printed publication to access related information not in the printed publication—the same concept long practiced by systems of sales representatives and printed product catalogs." *Id.* at 7. Tangelo was aware of these issues, having seen them raised by other defendants over two years ago and again by Tupperware in this case, but it nonetheless persisted and forced Tupperware to incur fees to defend itself against claims that should never have been filed in the first place.

Additionally, and unlike the claims brought in *Inventor Holdings*, Tangelo filed its complaint in the face of significant post-*Alice* precedent. *See Inventor Holdings*, 876 F.3d at 1379. Here, Tangelo chose to file more than two dozen lawsuits asserting an ineligible patent and, in so filing, ignored substantial precedent dismissing analogous claims directed to concepts long-practiced in society. *See Cellspin*, 2018 WL 3328164 at *3 (finding case exceptional where plaintiff asserted four ineligible patents in the face of "substantial precedent dismissing analogous data manipulation claims"). It failed to analyze its patents critically, thereby forcing Tupperware and this Court to expend resources needlessly. *See id.* at *4.

Tangelo's defense of the eligibility of its claims was also meritless. It argued that its claims were directed to improvements in computers, relying on cases such as *DDR*, *Enfish*, *Core Wireless*, and *Data Engine* in an attempt to save its claims. *See id.* at 5-7. The Court saw through that, correctly noting, "The '005 patent claims are directed to improving the usability of a physical publication page, not a graphical user interface." *Id.* at 7. As Judge Bryson, sitting by designation in the District of Delaware, recently noted, claims that "recite the concept, but not the way to implement it," are ineligible for patenting. *Epic IP LLC v. Backblaze, Inc.*, No. 1:18-cv-141, 2018 WL 6107029, at *5 (D. Del. Nov. 21, 2018). The '005 Patent is directed to a concept—a long-standing one practiced by retailers for decades—but not any particular implementation of that concept or any innovative improvement to computers used for practicing the concept. Tangelo did not and could not raise any arguments to the contrary. Its defense of the eligibility of the claims, like the claims themselves, was exceptionally weak.

### B.   An exceptional finding determination would advance considerations of compensation and deterrence.

The law permits the Court to consider deterrence as a factor in the § 285 analysis. *Octane Fitness*, 134 S. Ct. at 1756 n.6. Here, those considerations warrant a finding of exceptional case to prevent litigants like Tangelo from behaving the same way in the future. *See Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1930–31 (2015) ("[I]t is still necessary and proper to stress that district courts have the authority and responsibility to ensure frivolous cases are dissuaded"). Section 285 "serves as a deterrent to improper bringing of clearly unwarranted suits." *Automated Bus. Cos. v. NEC Am., Inc.*, 202 F.3d 1353, 1355 (Fed. Cir. 2000) ((quoting *Mathis v. Spears*, 857 F.2d 749, 753–54 (Fed. Cir. 1988)). The law is intended as a "safeguard" against litigants like Tangelo that "use patents as a sword to go after defendants for money, even when their claims are

8

frivolous." *Commil USA*, 135 S. Ct. at 1930.

The Supreme Court has commented on the benefit of fee-shifting statutes in litigation and the weight that should be afforded to the objective reasonableness of a party's litigating position. *See Kirtsaeng v. John Wiley & Sons*, 136 S. Ct. 1979 (2016). Although the Court addressed copyright law there, its discussion of the lack of merit in the plaintiff's case applies with equal force here:

> The objective-reasonableness approach . . . both encourages parties with strong legal positions to stand on their rights and deters those with weak ones from proceeding with litigation. When a litigant—whether plaintiff or defendant—is clearly correct, the likelihood that he will recover fees from the opposing (i.e., unreasonable) party gives him an incentive to litigate the case all the way to the end.

*Id.* at 1986. Here, Tupperware was clearly correct in arguing that the asserted claims were patent-ineligible, and Tangelo was clearly wrong. The Court can and should find that Tupperware should be awarded its attorneys' fees for standing on its rights. A finding of exceptional case here would signal to defendants that they can and should stand on their rights when faced with exceptionally meritless claims such as Tangelo's.

This case is similar to others where district courts have found cases exceptional due to a litigant's pursuit of objectively ineligible claims. *See, e.g.*, *Cellspin*, 2018 WL 3328164 at *3; *eDekka*, 2015 WL 9225038. For example, in *eDekka*, the plaintiff eDekka asserted U.S. Patent No. 6,266,674, which "relates to storing and labeling information and discloses a preferred embodiment that includes a cassette tape recorder with multiple buttons, a microphone, and a speaker." *Id.* at *1. eDekka asserted the patent against "online retailers that offer a shopping cart feature on their e-commerce websites." *Id.* The court explained the issues with the patent's facially-weak claims:

> The Court notes that the '674 Patent is demonstrably weak on its face, despite the initial presumptions created when this patent was issued by the PTO. The '674 Patent generically refers to a "data structure," but does not require such structure to be limited to a computer. The claims are not tied to a generic computer, let alone a specialized one. "Claim 1 essentially describes the common process of receiving, labeling, and storing information, while Claim 3 encompasses retrieving such information." The apparatus claims provide no additional features or meaningful limitations.

*Id.* at *2 (internal citations omitted). Judge Rodney Gilstrap concluded that the patent's "claims were clearly directed toward unpatentable subject matter, and no reasonable litigant could have reasonably expected success on the merits when defending against the numerous § 101 motions filed in this case." *Id.*

In finding the case exceptional, the *eDekka* court was particularly persuaded by the fact that the plaintiff "repeatedly offered insupportable arguments on behalf of an obviously weak patent." *Id.* at *4. Consequently, the court "question[ed] whether eDekka engaged in a reasonable and thorough pre-suit investigation regarding the § 101 standard and relevant authority before filing" its lawsuits. *Id.* The court therefore "identifie[d] a clear need to advance considerations of deterrence." *Id.*

Like in *eDekka*, Tangelo's asserted claims were obviously weak claims, asserted in the face of substantial precedent dismissing analogous claims directed to long-practiced societal concepts. Despite this precedent, Tangelo offered insupportable arguments on behalf of the claims. It failed, both in its briefing and in its argument during the hearing on the motions to dismiss, to identify any proper basis to support the eligibility of its claims. Accordingly, the Court is in a position to see that Tangelo did not "engage[] in a reasonable and thorough . . . investigation regarding the § 101 standard and relevant authority" before pursuing its lawsuits. *See eDekka*,

2015 WL 9225038 at *4. Therefore, like in *eDekka*, the Court can "identif[y] a clear need to advance considerations of deterrence" and find the case exceptional. *Id.*

## VI.    CONCLUSION

For the foregoing reasons, Tupperware respectfully requests that the Court grant its Motion, find this case exceptional, and award Tupperware its attorneys' fees of $53,671.50. Anderson Decl., Ex. 1.


Dated:  December 10, 2018                    FISH & RICHARDSON P.C.


                                             By: *Jeremy D. Anderson*
                                                 Jeremy D. Anderson (#4515)
                                                 222 Delaware Ave., 17th Floor
                                                 P.O. Box 1114
                                                 Wilmington, DE 19801
                                                 (302) 652-5070 Telephone
                                                 (302) 652-0607 Facsimile
                                                 janderson@fr.com

                                                 Neil J. McNabnay
                                                 Ricardo J. Bonilla
                                                 1717 Main Street, Suite 5000
                                                 Dallas, TX 75201
                                                 (214) 747-5070 (Telephone)
                                                 (214) 747-2091 (Facsimile)
                                                 mcnabnay@fr.com
                                                 rbonilla@fr.com
                                                 tdawson@fr.com

                                             *COUNSEL FOR DEFENDANT*
                                             *TUPPERWARE BRANDS CORPORATION*