IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TANGELO IP, LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 1:18-cv-692-RGA |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| TUPPERWARE BRANDS CORPORATION | ) |
| | ) |
| Defendant. | ) |
| | ) |

### PLAINTIFF TANGELO IP, LLC'S OPPOSITION TO
### TUPPERWARE BRANDS CORPORATION'S MOTION FOR EXCEPTIONAL CASE

STAMOULIS & WEINBLATT LLC

Stamatios Stamoulis #4606
Richard C. Weinblatt #5080
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
(302) 999-1540
stamoulis@swdelaw.com
weinblatt@swdelaw.com

*Attorneys for Plaintiff
Tangelo IP, LLC*

**TABLE OF CONTENTS**

**Page**

I.  NATURE AND STAGE OF PROCEEDINGS ...................................................1

II.  SUMMARY OF THE ARGUMENT...................................................................1

III.  STATEMENT OF FACTS ................................................................................2

IV.  LEGAL STANDARD........................................................................................3

V.  ARGUMENT.....................................................................................................5

    A.  This Case Was Filed In Good Faith...........................................................5

        1.  Tangelo's Eligibility Position Relating To Graphical User
           Interfaces (GUIs) Is Supported By The Federal Circuit..................6

        2.  The Patent Office Issued The Asserted Claims After The
           Supreme Court Established The Current Two-Step Patent-
           Eligibility Test In *Mayo*. ..............................................................7

        3.  Tangelo's Patent-Eligibility Positions Were Not Unreasonable
           Amidst The Rapidly-Evolving § 101 Jurisprudence. .....................8

           a.  Unlike In *Inventor Holdings*, There Were No Governing
              Precedents Finding Similar Claims Invalid. .................................10

           b.  Unlike in *Cellspin Soft*, There Were No Analogous
              Precedents Finding Similar Claims Invalid And Tangelo
              Did Not Aggressively Litigate This Case. ....................................11

           c.  Unlike In *SAP*, The USPTO Did Not Leave A Cloud
              On The Patent-In-Suit Regarding § 101. .......................................12

           d.  Unlike In *My Health*, The Federal Circuit Had Not
              Rendered Opinions Clearly Evidencing The '005 Patent
              Was Ineligible. ..............................................................................13

           e.  Unlike In *eDekka*, Tangelo Did Not Raise Untenable
              Arguments.....................................................................................14

    B.  The Totality Of The Circumstances Does Not Warrant A Finding That
       This Case Is Exceptional............................................................................14

    C.  Tupperware's Motion Does Not Warrant An Award of Fees Under The
       Court's Inherent Authority. .......................................................................16

    D.  Tupperware Failed to Properly Substantiate Its Fee Request. .................17

VI.  CONCLUSION................................................................................................19

i

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014)..................................................passim

*Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975) ...................................4, 17

*Asghari-Kamrani v. United Services Automobile Ass'n*, Civil No. 2:15cv478, 2017 WL 4418424 (E.D. Va. July 27, 2017)...............................................................................................................9

*AstraZeneca AB v. Aurobindo Pharma Ltd*, 232 F. Supp. 3d 636 (D. Del. 2017) ...............................6

*Aten Int'l Co. v. Uniclass Tech.*, No. CV 15-04424-AG (AJWx), slip op. (C.D. Cal. Mar. 30, 2018) .............................................................................................................................................16

*Bates v. Board of Education of the Capital School District*, C.A. No. 97-394, 2000 WL 1292677 (D. Del. Aug. 29, 2000)...............................................................................................................17

*Bilski v. Kappos*, 561 U.S. 593 (2010) .........................................................................................passim

*Cal. Inst. of Tech. v. Hughes Comm'ns, Inc.*, 59 F. Supp. 3d 974 (C.D. Cal. 2014) ...........................9

*Cellspin Soft, Inc. v. Fitbit, Inc.*, Case No.: 4:17-CV-5928-YGR, 2018 WL 3328164 (N.D. Cal. July 6, 2018)...........................................................................................................................................11

*CertusView Technologies, LLC v. S & N Locating Services, LLC,* 287 F. Supp. 3d 580 (E.D. Va. 2018).....................................................................................................................................9

*Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371 (Fed. Cir. 2017)........................................5

*Classen Immunotherapies, Inc. v. Biogen,* 2014 WL 2069653 (D. Md. May 14, 2014) ....................4

*Cognex Corp. v. Microscan Systems, Inc.*, No. 13-cv-2027 (JSR), 2014 WL 2989975 (S.D.N.Y. June 30, 2014) .......................................................................................................................4

*Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356 (Fed. Cir. 2018)............3, 6

*Credit Acceptance Corp. v. Westlake Services, LLC*, CV 13-01523 SJO (MRWx), 2015 WL 12860462 (N.D. Cal. Nov. 2, 2015).................................................................................................12

*Credit Card Fraud Control Corp. v. Maxmind, Inc.*, No. 3:14-cv-3262, 2016 WL 3355163 (N.D. Tex. Apr. 7, 2016) .......................................................................................................................10

*Data Engine Technologies LLC v. Google LLC*, 2017-1135, 2018 WL 4868029 (Fed. Cir. Oct. 9, 2018)................................................................................................................................3, 6, 14

*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014)..........................................2

*DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, No. 2:12-cv-764-WCB, 2015 WL 1284826 (E.D. Tex. Mar. 20, 2015)...................................................................................................7

*eDekka LLC v. 3Balls.com, Inc.*, No. 2:15-cv-541, 2015 WL 9225038 (E.D. Tex. Dec. 17, 2015)..14

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016)....................................................3, 9

*EON Corp. IP Holdings LLC v. Cisco Systems Inc.*, Case No. 12-cv-01011-JST, 2014 WL 3726170 (N.D. Cal. July 25, 2014) ...............................................................................................................15

*Epcon Gas Sys. Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022 (Fed. Cir. 2002) ........................3, 6

*Gametek LLC v. Zynga, Inc.*, CV 13-2546 RS, 2014 WL 4351414 (N.D. Cal. Sept. 2, 2014)......4, 15

*Garfum.com Corp. v. Reflections by Ruth*, No. 14-5919, 2016 WL 7325467 (D. N.J. Dec. 16, 2016) ....................................................................................................................................................7

*Gaymar Indus., Inc. v. Cincinnati Sub-Zero Products, Inc.*, 790 F.3d 1369 (Fed. Cir. 2015).....14, 15

*Howlink Global LLC v. Centris Info. Services, LLC*, 4:11-cv-71, 2015 WL 216773 (E.D. Tex. Jan. 8, 2015)..............................................................................................................................................5, 17

*Hutto v. Finney,* 437 U.S. 678 (1978) ............................................................................................5, 17

*Hyatt v. Kappos*, 625 F.3d 1320 (Fed. Cir. 2010)................................................................................7

*In re Protegrity Corp.*, No. 3:15-md-02600-JD, 2017 WL 747329 (N.D. Cal. Feb. 27, 2017)...........8

*Intellectual Ventures I LLC v. Capital One Financial Corp.*, C.A. No. 1:13cv0740 (AJT/TCB), 2015 WL 7283108 (E.D. Va. No. 17, 2015)...................................................................................10

*Intellectual Ventures II LLC v. Commerce Bancshares, Inc.*, No. 2:13-cv-04160-NKL, 2017 WL 4391776 (W.D. Mo. Sept. 29, 2017)...........................................................................................9, 10

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372 (Fed. Cir. 2017)...........8, 10, 11

*Marx v. General Revenue Corp.*, 133 S. Ct. 1166 (2013)....................................................................5

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012)..........passim

*Modine Mfg. Co. v. Allen Grp., Inc.*, 917 F.2d 538 (Fed. Cir. 1990) ................................................17

*My Health, Inc. v. ALR Technologies, Inc.*, Case No. 2:16-cv-00535-RWS-RSP, 2017 WL 6512221 (E.D. Tex. Dec. 19, 2017) ..............................................................................................................13

*Octane Fitness v. ICON Health & Fitness*, 134 S. Ct. 1749 (2014)............................................passim

*Printeron, Inc. v. BreezyPrint Corp.*, Civil Action No. H-13-3025, 2015 WL 7149442 (S.D. Tex. Nov. 10, 2015) .................................................................................................................. 15

*Pure Fishing, Inc. v. Normark Corp.*, No. 3:10-cv-02140-CMC, 2014 WL223096 (D.S.C. Jan. 21, 2014) ........................................................................................................................... 4

*Quad Envtl. Techs. Corp. v. Union Sanitary Dist.*, 946 F.2d 870 (Fed. Cir. 1991) ............................ 7

*Rothschild Mobile Imaging Innovations, LLC v. Mitek Systems, Inc.*, C.A. No. 14-617-GMS, 2018 WL 3599359 (D. Del. July 27, 2018) ...................................................................... 3

*SAP Am., Inc. v. Investpic, LLC*, C.A. No. 3:16-CV-02689-K, 2018 WL 993854 (N.D. Tex. Fed. 21, 2018) .............................................................................................................. 13

*Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1258 (Fed Cir. 2012) ............................................ 7

*SFA Systems, LLC v. Newegg Inc.*, 793 F.3d 1344 (Fed. Cir. 2015) ..................................................... 4

*Small v. Implant Direct*, No. 06 Civ. 683(NRB), 2014 WL 5463621 (S.D.N.Y. Oct. 23, 2014) ...... 15

*Stone Basket Innovations, LLC v. Cook Medical LLC*, 892 F.3d 1175 (Fed. Cir. 2018) ............. 15, 16

*Synopsys, Inc. v. Mentor Graphics Corp.*, No. 12-cv-6467-MMC, 2015 WL 4365494 (N.D. Cal. July 16, 2015) ................................................................................................................ 8

*Takeda Chem. Indus. v. Mylan Labs.*, 549 F.3d 1381 (Fed. Cir. 2008) ................................................ 4

*Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306 (Fed. Cir. 2013) ....................................... 5

*Trading Technologies Int'l, Inc. v. CQG, Inc.*, 675 F. App'x 1001 (Fed. Cir. 2017) .................. 3, 6, 14

*Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575 (1946) ........................................ 4, 17

*Veracode, Inc. v. Appthority, Inc.*, 137 F. Supp. 3d 17 (D. Mass. 2015) ........................................... 10

*Voter Verified, Inc. v. Election Systems & Software LLC*, 887 F.3d 1376 (Fed. Cir. 2018) ............... 7

*YYZ, LLC v. Pegasystems, Inc.*, No. 13-581-SLR, 2016 WL 1761955 (D. Del. May 2, 2016) ......... 10

**Statutes**

35 U.S.C. § 101 ..................................................................................................................... passim

35 U.S.C. § 282 ............................................................................................................................ 7

35 U.S.C. § 285 ..................................................................................................................... passim

**Other Authorities**

MPEP 2103-2016 ...................................................................................................................7

**Rules**

FED. R. EVID. 702 ................................................................................................................18

FED. R. EVID. 801 ................................................................................................................18

FED. R. EVID. 802 ................................................................................................................18

FED. R. EVID. 803 ................................................................................................................18

FED. R. EVID. 804 ................................................................................................................18

## I.       NATURE AND STAGE OF PROCEEDINGS

On May 7, 2018, Plaintiff Tangelo IP, LLC ("Tangelo") filed its complaint against Defendant Tupperware Brands Corporation (Tupperware") alleging infringement of United States Patent No. 8,429,005 (the "'005 patent").  On June 12, 2018, Tupperware filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).  (D.I. 7.)   The parties briefed the motion, and the Court held oral argument on November 15, 2018, after which it granted Tupperware's motion. (D.I. 17.)  Tupperware has now filed a motion seeking attorneys' fees (D.I. 20), to which Tangelo submits this opposition.

## II.      SUMMARY OF THE ARGUMENT

1.       The exceptional case doctrine is for the "rare" case that "stands out" from other suits due to the weakness of one party's litigation position or the unreasonableness of its litigation conduct.  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1753 (2014). Neither the merits of Tangelo's patent eligibility positions, nor its litigation strategy, motivation, or conduct 'stands out,' so this case is not exceptional.

2.       In support of patent-eligibility, Tangelo argued that the '005 patent claimed an improved graphical user interface ("GUI") that increased user-friendliness/usability of computers, and the Federal Circuit has held claims that improve user-friendliness of computers or that included GUIs were patent-eligible subject matter.  That the Court did not agree with Tangelo does not mean its argument was unreasonable or that this case stands out from others, making it "exceptional."

3.       The patent asserted in this lawsuit was issued by the Patent Office after the Supreme Court's *Bilski* and *Mayo* decisions. It was not unreasonable for Tangelo to conclude, based on the fact that its patent was examined and issued after *Bilski* and *Mayo*, that they claimed patent-eligible subject matter.

4.      Tangelo's advocacy in support of the eligibility of its patent was further warranted by the unsettled and developing legal landscape regarding eligibility.

5.      When evaluating the totality of the circumstances, including Tangelo's litigation behavior, it is evident that none of the egregious behavior that other courts have cited to support a fee award—such as obfuscation, bad faith, or conspiracy—exists in this case, and this case is not "exceptional."  Indeed, the Court did not schedule a scheduling conference, no scheduling order issued, and no discovery occurred.

6.      Finally, Tupperware failed to properly submit appropriate documents or evidence to support its fee request, and there is no factual basis upon which to award fees.  Instead, Tupperware submitted inadmissible hearsay and an "opinion" in the form of a declaration from one of its counsel that the fees his firm billed were reasonable.  Such an "opinion" is inappropriate because he clearly has a vested interest in calling the fees billed by the firm at which he works "reasonable."  Further, the Court should not permit Tupperware to supplement its documentation or evidence when filing its reply brief – such a tactic is gamesmanship that should not be allowed. Tupperware's motion should be denied.

## III.     STATEMENT OF FACTS

The '005 patent issued April 23, 2013 and claims priority to U.S. Application Ser. No. 09/406,171, filed on September 23, 1999.  (D.I. 1-1.)  Tangelo filed its complaint against Tupperware asserting infringement of the '005 patent on May 7, 2018 (D.I. 1), and no discussions took place between the parties regarding resolution or Tupperware's assertion that the '005 patent was invalid under 35 U.S.C. § 101.  On June 12, 2018, Tupperware filed a motion to dismiss seeking to invalidate the patent under 35 U.S.C. § 101 (D.I. 7) and an answer and counterclaim (D.I. 9).  Tangelo opposed the motion, relying on cases such as, among others, *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), *Enfish, LLC v. Microsoft Corp.*, 822 F.3d

2

1327 (Fed. Cir. 2016), *Trading Technologies Int'l, Inc. v. CQG, Inc.*, 675 F. App'x 1001 (Fed. Cir. 2017), in its opposition brief (D.I. 11), and on additional cases, including, but not limited to, *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356 (Fed. Cir. 2018),and *Data Engine Technologies LLC v. Google LLC*, 2017-1135, 2018 WL 4868029 (Fed. Cir. Oct. 9, 2018), during oral argument.  Notwithstanding Tangelo's arguments, the Court granted the motion and invalidated the '005 patent under § 101.  (D.I. 17.)  No date for a scheduling conference was set and no discovery occurred.

## IV.   LEGAL STANDARD

The award of attorneys' fees is governed by 35 U.S.C. § 285. The Supreme Court, in *Octane Fitness v. ICON Health & Fitness*, 134 S. Ct. 1749 (2014), rejected the Federal Circuit's "objectively baseless" and "subjective bad faith" formulation as "overly rigid" and laid out a more flexible framework.  *See id.* at 1756.  The Supreme Court thus attributed to the word "exceptional" its ordinary meaning: "uncommon," "rare," "not ordinary," "unusual," or "special." *Octane Fitness*, 134 S. Ct. at 1756.  The Court defined an "exceptional" case as "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.*; *accord Rothschild Mobile Imaging Innovations, LLC v. Mitek Systems, Inc.*, C.A. No. 14-617-GMS, 2018 WL 3599359, at *2 (D. Del. July 27, 2018) ("Exceptional cases involve 'litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement.'" (quoting *Epcon Gas Sys. Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002)).  District Court judges are free to exercise their discretion on a case-by-case basis, considering the totality of the circumstances, when determining whether attorneys' fees are appropriate. *Octane Fitness*, 134 S. Ct. at 1756.  Typically, § 285 sanctions are awarded where the offending party has engaged in some egregious conduct, such as, for example, failing to

conduct an adequate pre-filing investigation, intentionally withholding relevant documents or taking an untenable position on claim construction.[1]

"[I]t is the 'substantive *strength* of the party's litigating position' that is relevant to an exceptional case determination, not the *correctness* or eventual success of that position." *SFA Systems, LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) (quoting *Octane Fitness*, 134 S. Ct. at 1756) (emphasis in original).

If a prevailing party establishes by a preponderance of the evidence that the case is exceptional under § 285, the district court determines, in its discretion, whether and to what extent to award attorney fees and expenses. The amount of fees to be awarded, if any, depends on the extent to which the case is found to be exceptional.[2]

A court also may assess attorney fees under its inherent authority:

> when a party acted in bad faith, vexatiously, wantonly, for oppressive reasons, *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975), when a party commits fraud on the court, *Universal Oil Products Co. v. Root Refining Co.*, [328 U.S. 575, 580] (1946), or when a party delays or disrupts

---

[1] *See, e.g., SFA Systems, LLC v. Newegg Inc.*, 793 F.3d 1344, 1349-50, 1352 (Fed. Cir. 2015) (citing cases and providing examples of conduct warranting sanctions, such as, "destruction of relevant documents and lodging of incomplete and misleading extrinsic evidence," and "misrepresentation or misleading statements."); *Gametek LLC v. Zynga, Inc.*, CV 13-2546 RS, 2014 WL 4351414, at *3 (N.D. Cal. Sept. 2, 2014) ("Although *Octane* eased the standard for fee shifting, and clearly reduced the prevailing party's burden from clear and convincing to a preponderance of the evidence, post-*Octane* decisions awarding fees have concerned egregious behavior." (citing cases.))

[2] *See, e.g., Cognex Corp. v. Microscan Systems, Inc.*, No. 13-cv-2027 (JSR), 2014 WL 2989975, at *4 (S.D.N.Y. June 30, 2014) (awarding only "attorneys' fees for contesting any motions brought by defendants that have sought to reargue what was already decided by the Court"); *Classen Immunotherapies, Inc. v. Biogen,* 2014 WL 2069653, at *6 (D. Md. May 14, 2014) ("Classen knew from January 26, 2005 that its claims were objectively baseless . . . Accordingly, Biogen is entitled to an award of reasonable attorneys' fees and expenses incurred after that date."); *Pure Fishing, Inc. v. Normark Corp.*, No. 3:10-cv-02140-CMC, 2014 WL223096, at *20 (D.S.C. Jan. 21, 2014) (slip op.) ("Because the court has found Pure Fishing's pursuit of the Kelley Claim subjectively baseless only for a limited period of time, it limits its award of attorney fees for defense of the merits to the same period"); *Takeda Chem. Indus. v. Mylan Labs.*, 549 F.3d 1381, 1390 (Fed. Cir. 2008) (noting that fees for an entire suit are rarely awarded).

litigation or interferes with a court order's enforcement, *Hutto v. Finney,* 437 U.S. 678, 689 (1978).  ***Meeting the bar for attorneys' fees under a court's inherent powers is 'more stringent' than the bar under Section 285.***

*Howlink Global LLC v. Centris Info. Services, LLC*, 4:11-cv-71, 2015 WL 216773, at *6 (E.D. Tex. Jan. 8, 2015) (emphasis added).

## V.   ARGUMENT

For the reasons set forth below, Tupperware has failed to prove this case is exceptional under § 285.   Considering the totality of the circumstances—including the evolution of the law on patent eligibility—this is not the "rare" case where the Court should exercise its equitable discretion and depart from the "bedrock principle known as the 'American Rule,'" that "each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Marx v. General Revenue Corp.*, 133 S. Ct. 1166, 1175 (2013).

### A.   This Case Was Filed In Good Faith.

In deciding a motion for fees, the Court must start with the presumption that a patentee's "assertion of infringement of a duly granted patent is made in good faith."  *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1326-27 (Fed. Cir. 2013).  To overcome that presumption, a defendant must demonstrate, by a preponderance of the evidence, that the case is exceptional. *Octane Fitness*, 134 S. Ct. at 1758.  That presumption cannot be overcome simply because the patentee lost its case, or "as a penalty for failure to win a patent infringement suit." *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017).  Rather, the Court may enter a fee award under 35 U.S.C. § 285 only to prevent "gross injustice [which] should be bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which makes it grossly unjust" to not award fees.  *Id*.  "Although an exceptional case finding is no longer constrained to 'inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or

willful infringement,' *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002), the absence of such conduct also weighs against an award in this case." *AstraZeneca AB v. Aurobindo Pharma Ltd*, 232 F. Supp. 3d 636, 649 (D. Del. 2017).

> **1.    Tangelo's Eligibility Position Relating To Graphical User Interfaces (GUIs) Is Supported By The Federal Circuit.**

While Tangelo was ultimately unsuccessful in enforcing its patent rights, its eligibility positions were not baseless.  Tangelo argued that the '005 patent claimed an improved graphical user interface ("GUI") that increased user-friendliness/usability of computers, and the Federal Circuit has held claims that improve user-friendliness of computers or that included GUIs were patent-eligible subject.  *See Trading Technologies Int'l, Inc. v. CQG, Inc.*, 675 F. App'x 1001, 1004 (Fed. Cir. 2017) ("[T]he graphical user interface system . . . is not an idea that has long existed, the threshold criterion of an abstract idea and ineligible concept."), *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356, 1359, 1363 (Fed. Cir. 2018) (Claims directed to an improved user interface for computing devices with small screens were held not abstract because they permitted users "to more quickly access desired data stored in, and functions of applications included in, the electronic devices" and thus were an "improvement in the functioning of computers, particularly those with small screens."); *Data Engine Technologies LLC v. Google LLC*, 2017-1135, 2018 WL 4868029, at *5 (Fed. Cir. Oct. 9, 2018) (A claim that "claims a particular manner of navigating three-dimensional spreadsheets, implementing an improvement in electronic spreadsheet functionality" is not abstract and it solved the prior art problem of computer spreadsheets being not "user friendly.").  That the Court did not agree with Tangelo does not mean it was unreasonable for Tangelo to bring suit and pursue its claims.

     **2.**    **The Patent Office Issued The Asserted Claims After The Supreme Court Established The Current Two-Step Patent-Eligibility Test In *Mayo*.**

When it filed this case, Tangelo was entitled to rely on the presumption that the Patent Office did its job, and that patent claims issued under the current legal standards are valid when issued. *See* 35 U.S.C. § 282(a); *Garfum.com Corp. v. Reflections by Ruth*, No. 14-5919, 2016 WL 7325467, at *4 (D. N.J. Dec. 16, 2016) (declaring that, even regarding § 101 determinations, district courts may "take cognizance of, and benefit from, the proceedings before the patent examiner." (quoting *Quad Envtl. Techs. Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 876 (Fed. Cir. 1991)); *Hyatt v. Kappos*, 625 F.3d 1320, 1334 (Fed. Cir. 2010) (recognizing deference owed to the Patent Office as "the knowledgeable agency charged with assessing patentability.").

The '005 patent issued after the Supreme Court's decisions in *Bilski* and *Mayo*. It was not unreasonable for Tangelo to conclude that its patent issued by the Patent Office under the prevailing *Mayo* standard for patent-eligibility was eligible for patenting. *See Voter Verified, Inc. v. Election Systems & Software LLC*, 887 F.3d 1376, 1382 (Fed. Cir. 2018) (holding that *Alice* . . . did not alter the governing law of § 101. In *Alice*, the Court applied the same two-step framework it created in *Mayo* in its § 101 analysis.").

The examiner who reviewed the '005 patent during prosecution was required to consider § 101 eligibility during prosecution, MPEP 2103-2016, and an examiner is presumed to have done his or her job. *See Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1258 (Fed Cir. 2012); *Garfum.com*, 2016 WL 7325467, at *4. As other courts have found, it was not unreasonable for Tangelo to rely on the qualified examiner at the Patent Office. *See, e.g., Garfum.com*, 2016 WL 7325467, at *4; *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc*., No. 2:12-cv-764-WCB, 2015 WL 1284826, at *2 (E.D. Tex. Mar. 20, 2015) (fact that patent issued after Supreme Court § 101 decisions was *prima facie* evidence against argument patent was obviously invalid in view of

7

those decisions); *In re Protegrity Corp.*, No. 3:15-md-02600-JD, 2017 WL 747329, at *6 (N.D. Cal. Feb. 27, 2017) ("[Patentee] owned presumptively valid patents, and *Alice* did not, as [defendant] urges, provide such clear-cut guidance that [patentee] should have voluntarily given that presumption up without a fight.").

Tupperware offers no basis to disregard the work of the examiner at the USPTO or the presumption of validity.  Although Tupperware now argues that "the '005 Patent is objectively ineligible," (D.I. 21 at 6; *id.* at 3 (". . . the patent is objectively ineligible."), Tupperware did not raise that allegedly clear basis for ineligibility with the Court in its motion to dismiss. (D.I. 8, 14.) In fact, this Court did not declare the '005 patent's claims were objectively without merit and that Tupperware should have known.  (D.I. 17).  This is drastically different from *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372 (Fed. Cir. 2017), where the Federal Circuit affirmed the Court's decision that "following the *Alice* decision, IH's claims were objectively without merit." *Id.* at 1374.

Tupperware's only basis for awarding fees accrued is that the claims were so obviously invalid that the case is exceptional.  But Tupperware did not show that Tangelo's reliance on the Patent Office's examination of the '005 patent under *Bilski* and *Mayo* was frivolous, and no ruling supports that position.  Accordingly, Tupperware's request for a finding of exceptionality and fees should be rejected.

### 3.     Tangelo's Patent-Eligibility Positions Were Not Unreasonable Amidst The Rapidly-Evolving § 101 Jurisprudence.

Patent eligibility has received considerable scrutiny in recent years. *See Synopsys, Inc. v. Mentor Graphics Corp.*, No. 12-cv-6467-MMC, 2015 WL 4365494, *4 (N.D. Cal. July 16, 2015) (noting the "inventive concept" characterization is a "developing area of the law.").  The unsettled state of § 101 jurisprudence and continuing development of the law undercuts Tupperware's

argument that Tangelo was unreasonable in defending the patent-eligibility of its inventions. *See Intellectual Ventures II LLC v. Commerce Bancshares, Inc.*, No. 2:13-cv-04160-NKL, 2017 WL 4391776, at *7 (W.D. Mo. Sept. 29, 2017) (collecting cases observing § 101 law was "in flux" even after *Alice*).  Contemporaneous statements by other courts illustrate the unsettled state of the law after *Alice*.  *See, e.g.*, *CertusView Technologies, LLC v. S & N Locating Services, LLC,* 287 F. Supp. 3d 580, 592 (E.D. Va. 2018) ("[A]n examination of post-*Alice* opinions from the Federal Circuit reflect continued development in this nuanced area of patent law, and this Court, like other district courts, recognizes such evolution."); *Cal. Inst. of Tech. v. Hughes Comm'ns, Inc.*, 59 F. Supp. 3d 974, 980, 984-86, 990 (C.D. Cal. 2014) (observing *Alice* was "opaque"; "Supreme Court decisions on § 101 often confuse more than they clarify"; and "neither *Alice* nor any other Supreme Court precedent defines when software is patentable.").

Nor were Federal Circuit opinions sufficiently on point to be dispositive regarding the application of *Alice* to the claims of the '005 patent.  As discussed above, Tangelo viewed its claimed "interactive and electronic representation" having certain functionality as a graphical user interface ("GUI") that incorporated specific features and functionality which increased user-friendliness/usability of computers (D.I. 11 at 11-14), and the Federal Circuit has held GUI claims eligible.

Most courts addressing § 285 where a patent owner lost a § 101 dispute concluded the case was not exceptional and denied fees.  *See, e.g., Asghari-Kamrani v. United Services Automobile Ass'n*, Civil No. 2:15cv478, 2017 WL 4418424, at *13 (E.D. Va. July 27, 2017) ("[A]lthough, in light of Alice [*sic*], Plaintiffs should have considered carefully the wisdom of bringing allegations of patent infringement, the Court cannot conclude, in light of the evolving jurisprudence stemming from <u>Alice</u>, <u>see, e.g.</u>, <u>Enfish, LLC</u>, 2016 WL 2756255, that Plaintiffs' litigating position was so

baseless as to render this case exceptional."); *Intellectual Ventures II*, 2017 WL 4391776, at \*7-\*8 (finding the evolving legal landscape around § 101 precluded finding patent owner's § 101 positions were unreasonable and collecting cases finding the law post-*Alice* was in flux); *Credit Card Fraud Control Corp. v. Maxmind, Inc.*, No. 3:14-cv-3262, 2016 WL 3355163, at \*2 (N.D. Tex. Apr. 7, 2016) (Plaintiff's litigation position regarding § 101 "was not frivolous or objectively unreasonable."); *YYZ, LLC v. Pegasystems, Inc.*, No. 13-581-SLR, 2016 WL 1761955, at \*1 (D. Del. May 2, 2016) ("[T]he § 101 analysis is an evolving state of the law and a difficult exercise, which does not lend itself to, e.g., shifting fees pursuant to 35 U.S.C. § 285."); *Veracode, Inc. v. Appthority, Inc.*, 137 F. Supp. 3d 17, 101 (D. Mass. 2015) (finding case not exceptional where case arose "in a highly technical area of rapid growth and development" with shifting law.).

Tupperware points to a handful of cases where exceptional case determinations were made, (D.I. 21 at 6), but as Tangelo explains below, each of those cases is distinguishable. Rather, this case falls within the usual category of cases where the ultimate merits were determined in light of evolving legal standards that are highly conceptual and nuanced. *See, e.g., Intellectual Ventures I LLC v. Capital One Financial Corp.*, C.A. No. 1:13cv0740 (AJT/TCB), 2015 WL 7283108, at \*5 (E.D. Va. Nov. 17, 2015).

### a.    Unlike In *Inventor Holdings*, There Were No Governing Precedents Finding Similar Claims Invalid.

In *Inventor Holdings*, the patent-in-suit issued before both *Bilski* and *Mayo* were decided. The Federal Circuit ruled "the patent claims here are directed to a fundamental economic practice." *Inventor Holdings*, 876 F.3d at 1379. "The idea that a customer may pay for items ordered from a remote seller at a third-party's local establishment is the type of fundamental business practice that, when implemented using generic computer technology, is not patent-eligible under *Alice*, 134 S. Ct. at 2355." *Id.* at 1378.

This case is distinguishable from *Inventor Holdings*.  The claims here issued after *Bilski* and *Mayo*, and were therefore entitled to a presumption of validity under the current legal standard for patent eligibility.  Additionally, the claims here are not directed to financial business methods or fundamental economic concepts.

Unlike in *Inventor Holdings*, where the court found the claims "objectively ineligible" because they were nearly identical to the financial business method claims that the Supreme Court rejected in *Bilski* and *Alice*, there were no governing precedents to guide Tangelo that found nearly identical claims invalid. Nor did this Court find the claims identical to the claims in any of the previously decided cases. (D.I. 17.)

> **b.** **Unlike in *Cellspin Soft*, There Were No Analogous Precedents Finding Similar Claims Invalid And Tangelo Did Not Aggressively Litigate This Case.**

In *Cellspin*, the court ruled Cellspin asserted four patents and "ignored substantial precedent dismissing analogous data manipulation patent claims." *Cellspin Soft, Inc. v. Fitbit, Inc.*, Case No.: 4:17-CV-5928-YGR, 2018 WL 3328164, at *3 (N.D. Cal. July 6, 2018) (citing analogous cases.)  Cellspin's patents at issue "are directed at the abstract idea of a method of acquiring, transferring, and publishing data and/or multimedia content." *Id.*  Cellspin also "litigated its exceptionally meritless claims aggressively. Plaintiff did not agree to stay discovery pending resolution of Omnibus Defendants' Section 101 motion until after the hearing on that motion." *Id.* at *3.

Here, the Court found:

> Claim 1 of the '005 patent, though lengthy, has few substantive limitations. The claim essentially comprises: (1) associating a page number of a physical publication page with an interactive and electronic replication of at least a portion of that page; (2) the page visibly having at least two different products and a page number; (3) receiving by a host computer an input page number; ( 4) providing the replication of the page; and (5) the replication enabling the user to obtain additional information on the products. '005 patent, claim 1. I believe this method is directed

> to the abstract idea of using an identifier to allow a reader of a printed publication
> to access related information not in the printed publication.

(D.I. 17 at 4.)  The Court agreed with Tupperware's attorney argument that "'[c]ustomers would contact sales representatives and obtain additional product information by keying in on the catalog page number, description, or part number associated with the product.'"  (*Id.* at 5.)  But, the Court did not identify any cases finding the same or similar cases ineligible and instead distinguished the cases upon which Tangelo relied.  (*Id.* at 5-7.)

Also, Tangelo cannot be said to have litigated this case aggressively.  No discovery occurred.  No scheduling conference was set and no scheduling order issued.  Thus, *Cellspin* is inapposite.[3]

### c.     Unlike In *SAP*, The USPTO Did Not Leave A Cloud On The Patent-In-Suit Regarding § 101.

In *SAP*, the court held that it

> believes that even when a patent is challenged on a § 101 issue, a patent owner
> should be entitled to rely on the fact that the claims were reviewed and approved
> by the USPTO and should be allowed to attempt to enforce his or her patent whether
> this is done by demand for licensing or by enforcement of patent rights in a court.
> So, the lone fact that a patent owner asserted patent claims in litigation that
> ultimately were found to be invalid under § 101 is typically insufficient for finding
> a case exceptional.

*SAP Am., Inc. v. Investpic, LLC*, C.A. No. 3:16-CV-02689-K, 2018 WL 993854, at *2 (N.D. Tex.

---

[3]  In addition, regarding analogous § 101 cases, a court has held:
> Defendants' arguments, when taken to their logical conclusion, would appear to
> require that any plaintiff asserting a patent "similar to" patents found unpatentable
> under Section 101 in a separate case voluntarily dismiss with prejudice their
> infringement claims—or perhaps even forfeit their patents altogether—or face the
> risk of an attorneys' fee award pursuant to Section 285.  The contours of Section
> 101 have proven difficult to apply in practice both before and after *Alice*, and the
> Court declines the opportunity to read Section 285 so broadly as to impose such a
> harsh and unfeasible fee-shifting rule on patent owners.

*Credit Acceptance Corp. v. Westlake Services, LLC*, CV 13-01523 SJO (MRWx), 2015 WL 12860462, at *8 (N.D. Cal. Nov. 2, 2015).

Fed. 21, 2018).

However, the court found the case stood out from typical cases in which a patent's claims were invalidated. *Id.* "That is because Investpic was specifically warned by the USPTO that it looked very unlikely that these claims were directed toward patentable subject matter and very likely that the claims were invalid." *Id.* The court concluded:

> So, considering the totality of the circumstances regarding Investpic's litigation position in this matter, including the facts that the USPTO warned Investpic that the claims were likely invalid, that the USPTO noted that another review of the patent was ongoing and available to review the subject matter issue, that Investpic ignored this warning and invitation to properly review the issue, and that Investpic instead continued to vigorously attempt to enforce the patent claims the Court finds that Investpic's litigation position in this matter supports a determination that the case is exceptional.

*Id.* The court also found that the manner in which Invespic litigated the case was exceptional because "[w]hile this litigation was on going, Mr. Lee Miller and Dr. Samir Varma, who are both owners of Investpic, reached out to SAP sales people and pretended to be potential purchasers of SAP's product that is in contention in this matter." *Id.*

Here, not only did no discovery take place, the USPTO did not indicate to Tangelo that the claims were invalid under § 101 and "create[ ] a serious cloud" on the claims of the '005 patent. *Id.* That is a significant difference between this case and *SAP*.

### d. Unlike In *My Health*, The Federal Circuit Had Not Rendered Opinions Clearly Evidencing The '005 Patent Was Ineligible.

In *My Health*, the court declared "[p]atient treatment and monitoring methods such as those claimed by the '985 patent had been declared ineligible long before My Health filed its 2016 lawsuits." *My Health, Inc. v. ALR Technologies, Inc.*, Case No. 2:16-cv-00535-RWS-RSP, 2017 WL 6512221, at *4 (E.D. Tex. Dec. 19, 2017). "The claims did not require any hardware or software component . . . ." *Id.* at *2. "As the Court recognized in evaluating defendants' § 101 motion, '[s]uch claims have universally been found to be unpatentable under *Alice*.'" *Id.* at

*4.  The same cannot be said about the claims of the '005 patent.  *See* discussion *supra* (citing *Trading Technologies Int'l, Inc. v. CQG, Inc.*, 675 F. App'x 1001 (Fed. Cir. 2017); *Data Engine Technologies LLC v. Google LLC*, 2017-1135, 2018 WL 4868029 (Fed. Cir. Oct. 9, 2018); *Core Wireless Licensing S.A.R.L. LG Electronics, Inc.*, 880 F.3d 11356 (Fed. Cir. 2018)).

e.    **Unlike In *eDekka*, Tangelo Did Not Raise Untenable Arguments.**

In *eDekka*, the court found "eDekka proffered completely untenable arguments to the Court throughout the § 101 briefing process and at the September 10, 2015 hearing."  *eDekka LLC v. 3Balls.com, Inc.*, No. 2:15-cv-541, 2015 WL 9225038, at *3 (E.D. Tex. Dec. 17, 2015).  More specifically, the court "found absolutely no basis in the claim language to support eDekka's newfound position that the '674 Patent was meant to serve as a teaching tool for computer users" and "that if the declarations [eDekka submitted to the court] are to be believed and the '674 Patent claims did require specialized software or a special purpose computer, then the '674 Patent claims would likely exclude the preferred embodiment."  *Id.* at *3, *3 n.5.  In other words, "eDekka repeatedly offered insupportable arguments" on behalf of the patent-in-suit which supported an "exceptional case" finding.  *Id.* at *4.  Here, Tangelo made no such arguments, and *eDekka* is inapposite.

B.    **The Totality Of The Circumstances Does Not Warrant A Finding That This Case Is Exceptional.**

Here, none of Tangelo's arguments warrant a fee award.  There is no showing sufficient to support the "rare" finding that this case "stands out" from others.  What Tupperware has shown is that the Court did not agree with Tangelo's arguments opposition the motion to dismiss seeking to invalidate the '005 patent under § 101.  But, assertions that a party's arguments were wrong generally do not make a case "exceptional."  *See, e.g., Gaymar Indus., Inc. v. Cincinnati Sub-Zero Products, Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015) ("In summary, the examples cited by the

district court—whether considered in isolation or in the aggregate—amount to sloppy argument, at worst.  While such sloppiness on the part of litigants is unfortunately all too common, it does not amount to misrepresentation or misconduct.").  If a party made some good-faith argument in support of its position, it generally will not be found to have advanced "exceptionally meritless" claims.  *Small v. Implant Direct*, No. 06 Civ. 683(NRB), 2014 WL 5463621, at *3 (S.D.N.Y. Oct. 23, 2014); *Printeron, Inc. v. BreezyPrint Corp.*, Civil Action No. H-13-3025, 2015 WL 7149442, at *2 (S.D. Tex. Nov. 10, 2015); *see also EON Corp. IP Holdings LLC v. Cisco Systems Inc.*, Case No. 12-cv-01011-JST, 2014 WL 3726170, at *5 (N.D. Cal. July 25, 2014) (even when the plaintiff's argument was "quite stretched" and its conduct "difficult to explain," the court could not "quite conclude that no reasonable patentee could see an opening . . . through which the argument could be squeezed"); *Gametek LLC v. Zynga, Inc.*, CV 13-2546 RS, 2014 WL 4351414, at *3 (N.D. Cal. Sept. 2, 2014) (finding the plaintiff's briefing, which "consisted of granular parsing of the claimed steps rather than any substantive explanation of how [the invention] differed from the underlying abstract idea," was inadequate but holding that it "did not . . . descend to the level of frivolous argument or objective unreasonableness.").

"[T]he conduct of the parties is a relevant factor under *Octane*'s totality-of-the-circumstances inquiry, including the conduct of the movant," *Gaymar*, 790 F.3d at 1373 (footnote omitted) (considering conduct of the movant in assessing exceptionality), and Tupperware did not send any communication to Tangelo that explained – let alone precisely explain – its invalidity argument that the '005 patent was invalid under § 101.  *Stone Basket Innovations, LLC v. Cook Medical LLC*, 892 F.3d 1175, 1181 (Fed. Cir. 2018).  This lack of communication and "failure to provide early, focused, and supported notice of its belief that it was being subjected to exceptional litigation behavior further" supports the notion that Tangelo's case does not "'stand out'" from

others." *Id.* (quoting *Octane Fitness*, 134 S. Ct. at 1756). There is nothing in the record to conclude that Tangelo was on clear notice that it was wrong regarding its position on § 101. *Id.* ("'A party cannot simply hide under a rock, quietly documenting all the ways it's been wronged, so that it can march out its 'parade of horribles' after all is said and done.'" (quoting *Aten Int'l Co. v. Uniclass Tech.*, No. CV 15-04424-AG (AJWx), slip op. at 5 (C.D. Cal. Mar. 30, 2018)).

Instead, Tupperware references earlier filed cases and asserts "[o]n multiple occasions, defendants have filed motions attacking the eligibility of the '005 Patent's claims."[45] (D.I. 21 at 2.) As an initial matter, as this Court well-knows, counterclaims of invalidity and most recently motions asserting invalidity based on § 101 are commonplace and have become almost a generic aspect of current patent litigation. No reliance should be given by this Court to the fact that a defendant in a prior case engaged in the type of boilerplate invalidity practice that is not a reliable indicator of a patent's validity. In addition, the existence of those prior challenges cuts the other way. The fact that those challenges were made *and then settled* demonstrates that the moving party recognized the risk that the challenge would be denied.

### C. Tupperware's Motion Does Not Warrant An Award of Fees Under The Court's Inherent Authority.

Tupperware makes no showing that the Court should exercise its inherent authority and grant Tupperware its attorneys' fees.

Courts may take into account a number of factors, including: when a party acted in

---

[4] The mere fact that a defendant has raised a § 101 argument and has satisfied Rule 11 to themselves does not mean that such an argument will ultimately be successful.

[5] Tupperware presented no settlement data with respect to the '005 patent. Instead, it seeks to imply that Tangelo had an improper motive for settling prior cases. For example, Tupperware mentions a hearing in the Eastern District of Texas on the issue of eligibility in November 2016 that settled before an order issued. (D.I. 21 at 2.) As this Court knows, cases often settle after hearings occur but before any order on the subject matter of hearing issues. That this happens does not mean that the patent owner thought it would lose. To the contrary, it may mean that the challenger thought it would lose, or simply that both sides perceived reasonable risk in the matter.

bad faith, vexatiously, wantonly, for oppressive reasons, *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975), when a party commits fraud on the court, *Universal Oil Products Co. v. Root Refining Co.*, [328 U.S. 575, 580] (1946), or when a party delays or disrupts litigation or interferes with a court order's enforcement, *Hutto v. Finney,* 437 U.S. 678, 689 (1978). ***Meeting the bar for attorneys' fees under a court's inherent powers is 'more stringent' than the bar under Section 285.***

*Howlink Global*, 2015 WL 216773, at *6 (emphasis added).

Tupperware has not made any evidentiary showing that Tangelo's conduct in this case implicates any of these factors. Nor could it. Accordingly, the Court should not exercise of inherent authority.

### D.      Tupperware Failed to Properly Substantiate Its Fee Request.

Even if the Court determines that this case is exceptional, attorneys' fees are not automatically awarded. "[T]he decision whether or not to award fees is . . . committed to the discretion of the trial judge, and even an exceptional case does not require in all circumstances the award of attorney fees." *Modine Mfg. Co. v. Allen Grp., Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990). Nevertheless, the Court considers the following factors when deciding whether a fee application is reasonable: (1) whether the documentation submitted adequately supports the hours claimed by the attorneys; (2) whether the hours claimed were reasonably expended; (3) whether the attorneys' hourly rates are reasonable; (4) whether reductions are appropriate; and (5) whether the applicant's request for other costs is reasonable. *Bates v. Board of Education of the Capital School District*, C.A. No. 97-394, 2000 WL 1292677, at *2 (D. Del. Aug. 29, 2000). Tupperware's motion fails.

Tupperware's submitted documentation (factor 1) is wholly inadequate and Tupperware should not be permitted to supplement its documentation.[6] Tupperware submitted no billing

---

[6] The District of Delaware typically does not permit sur-replies in opposition to a motion. Tupperware was in possession of the appropriate documentation in support of its motion at the time of filing and waiting to submit such documentation until filing a reply brief is gamesmanship that the Court should not permit.

records for its attorneys. (D.I. 22-1.)  Tupperware did not submit any detailed time entries, including the date the work was performed, by whom, a detailed record of the work performed and the hours expended, much less evidence as to whether the total hours expended were reasonable (factor 2).  Without a description of what work each attorney performed, the Court is unable to determine if the rate was reasonable for that work (factor 3).  Having failed to include descriptions of work performed by each attorney in the opening brief, Tupperware instead merely attached a list of billed hours with no descriptions to the declaration of Jeremy D. Anderson in support of its motion alongside a conclusory assertion that the fees are reasonable (D.I. 22 at ¶ 7).  Tupperware also submitted excerpts from an AIPLA 2017 economic survey (D.I. 22-2) and a 2017 Docket Navigator Report (D.I. 22-3) that have no bearing on this case, and biographies for each of the attorneys who represented Tupperware (D.I. 22-4), which does nothing to inform this Court as to the work performed for this case.

The 2017 economic survey and 2017 Docket Navigator Report constitute inadmissible hearsay and should be excluded.  FED. R. EVID. 801; FED. R. EVID. 802.  No exception to the rule against hearsay exists in this case.  FED. R. EVID. 803; FED. R. EVID. 804.  Furthermore, neither Tupperware nor Mr. Anderson has first-hand knowledge of any of the statistics compiled by Docket Navigator and AIPLA, or whether the statements are in fact reliable.  Mr. Anderson, who has not been qualified as an expert per FED. R. EVID. 702,  rendered an opinion.  (D.I. 22 at ¶ 7.) Yet, he is not an expert who could rely on hearsay in forming his opinion.  The appropriateness of Mr. Anderson's opinion is not merely an academic exercise.  He is an employee at the law firm that is seeking to have its client awarded attorneys' fees billed by the firm at which he works. Because of this vested interest, of course he is going to opine the attorneys' fees sought are reasonable.

Tupperware's inadequate documentation prevents the Court from being able to determine if any reductions are appropriate.  Tupperware's complete failure to present evidence on factors 1-4 prevents any meaningful evaluation of whether the fees sought are "reasonable" under factor 5.

Absent admissible evidence or evidence that is likely to be admissible, there is no factual basis upon which to award fees.  Tupperware relies on a chart (D.I. 22-1) which is vague and objectionable hearsay.  There is no possible way to determine the actual work performed and number of hours spent performing that work, or to determine if the time entries in any way relate to the alleged basis for awarding fees.  That Tupperware did not submit admissible evidence supporting actual fees to be awarded supports a denial of its Motion.

## VI.    CONCLUSION

For the foregoing reasons, Tangelo respectfully requests that Tupperware's motion be denied.

Dated:  December 24, 2018              STAMOULIS & WEINBLATT LLC

                                       */s/ Richard C. Weinblatt*
                                       Stamatios Stamoulis #4606
                                       Richard C. Weinblatt #5080
                                       Two Fox Point Centre
                                       6 Denny Road, Suite 307
                                       Wilmington, DE 19809
                                       (302) 999-1540
                                       stamoulis@swdelaw.com
                                       weinblatt@swdelaw.com

                                       *Attorneys for Plaintiff*
                                       *Tangelo IP, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 24, 2018, I electronically filed the above document(s) with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to all registered counsel.

*/s/ Richard C. Weinblatt*
Richard C. Weinblatt #5080